UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SIERRA PACIFIC POWER COMPANY <br> d/b/a NV ENERGY, a corporation, <br><br> Petitioner, <br><br> v. <br><br> INTERNATIONAL BROTHERHOOD OF <br> ELECTRICAL WORKERS LOCAL UNION <br> 1245, <br><br> Respondent. | 3:14-cv-0441-LRH-WGC <br><br> ORDER |

Before the Court is Petitioner NV Energy's ("NV Energy") Motion to Vacate Arbitration Award. Doc. # 24.[1] Respondent International Brotherhood of Electrical Workers Local Union 1245 ("Local 1245") filed an Opposition (Doc. #27), to which NV Energy replied (Doc. #28). Also before the Court is Local 1245's Motion for Summary Judgment. Doc. #25. NV Energy filed a Response (Doc. #26), to which Local 1245 replied (Doc. #29).

**I.    Factual Background**

Local 1245 encompasses operations, maintenance, and clerical employees of NV Energy, including control room operators at NV Energy's Fort Churchill, Nevada facility. NV Energy and Local 1245 are parties to a written collective bargaining agreement effective September 23, 2013, through September 22, 2017 ("2013-2017 CBA"). The 2013-2017 CBA is nearly identical to a

---

[1] Refers to the Court's docket number.

predecessor collective bargaining agreement that took effect on August 16, 2010 ("the CBA"). The CBA governs wages, hours, and terms and conditions of employment for all unit employees at NV Energy, including control room operators. The CBA states that grievances between Local 1245 (or an employee) and NV Energy must be resolved through the procedures set forth in the CBA, which provides that disputes that are not resolved must be referred to arbitration. The CBA states that "[t]he conclusions of the arbitrator shall be final and binding." Doc. #23, Ex. A ¶21.7.

On August 17, 2011, NV Energy terminated CBA unit employee Victor Parker ("Parker"), a control room operator, for making racially offensive remarks to other employees. NV Energy justified Parker's termination under the CBA's "Power of Integrity," harassment, and retaliation policies. Previously, in 2009, Parker had been placed on a three-day disciplinary suspension following an investigation of inappropriate emails sent to other employees. These emails included nudity, sexually explicit details about Parker and his wife, and language steeped in offensive stereotypes about African Americans and Mexicans. Parker's termination was based in part on reports that Parker continued to make inappropriate and offensive statements to coworkers after he returned from his suspension in 2009. In particular, John Hernandez ("Hernandez"), who began working with Parker in 2010, reported that Parker repeatedly made offensive statements that referred negatively to "niggers" and Mexicans.

Local 1245 timely filed a grievance on Parker's behalf demanding that he be reinstated and made whole. After failing to resolve the dispute in the initial stages of the grievance process, the conflict was referred to binding arbitration. The parties selected Arbitrator Matthew Goldberg ("the Arbitrator") to hear the grievance, and tasked him with deciding two questions: "Whether the Grievant (Victor Parker) was discharged for cause and if not, what was the appropriate remedy?" The arbitration hearing lasted three days, during which the NV Energy and Local 1245 presented opening statements, live testimony including direct and cross examination, and documentary exhibits. Both parties thereafter submitted post-hearing briefs.

///

On June 30, 2014, the Arbitrator found that based on the evidence presented, NV Energy had just cause to impose serious discipline for Parker's conduct, but that NV Energy did not meet its burden to establish that termination was justified. Doc. #23, Ex. A at 354. The reliability of Hernandez's testimony was central to the Arbitrator's award. On the one hand, the Arbitrator wrote that Hernandez's "claims, though inexact, bear the ring of truth." *Id.* at 349. The Arbitrator added that Hernandez's testimony was "thoroughly consistent with that of an individual subject to a hostile working environment." *Id.* On the other hand, the Arbitrator wrote that Hernandez's testimony "was rambling, internally inconsistent, and lacking in detail. Foundational elements were frequently if not entirely absent from his recitation, as he could not pinpoint dates and times when offensive remarks were purportedly made." *Id.* at 348. The Arbitrator added that this testimony was "wholly uncorroborated," which was "particularly glaring in light of Hernandez['s] insistence that grievant's offenses were committed nearly always in the presence of others, stated in a loud voice, and repeated with disturbing regularity." *Id.* at 349. Ultimately, the Arbitrator found that the discrepancies in this testimony—the only testimony presented by NV Energy—weighed in favor of Parker: "Hernandez['s] inexact, inconsistent, and confused account made corroboration of its particulars by other witnesses all but essential for the account to be substantially credited. Conversely, the absence of corroboration diminishes the weight of the Employer's evidence considerably." *Id.* at 350.

The Arbitrator therefore found that NV Energy did not meet "its burden of proving the length and breadth of the allegations which led its investigators to conclude that the grievant committed misconduct which warranted his discharge." *Id.* at 354. As a remedy, the Arbitrator ordered that Parker be reinstated with no loss of seniority but without backpay, subject to a "last chance" agreement. The Arbitrator also ordered Parker to attend sensitivity training at his own expense. Parker completed sensitivity training, but NV Energy has refused to reinstate him. Instead, NV Energy filed the present Motion to Vacate the Arbitrator's Award on February 27,

///

3

2015. That same day, Local 1245 filed the present Motion for Summary Judgment, requesting that the Court enforce the Arbitrator's award.

## II.     Legal Standard

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 *et seq*, empowers district courts to review an arbitration award conducted under the terms of a collective bargaining agreement. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 986 (9th Cir. 2001) (citing *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960)). "Judicial scrutiny of an arbitrator's decision is extremely limited." *Sheet Metal Workers Int'l Ass'n, Local No. 359, AFL-CIO v. Ariz. Mech. & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir. 1988). "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *United Paperworks Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (quoting *Enterprise Wheel*, 363 U.S. at 597). An arbitrator's decision must be upheld "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Id.* at 38. A court cannot vacate an arbitrator's decision simply because its interpretation of the contract differs from the arbitrator's interpretation. *Id.*; *Sprewell*, 266 F.3d at 986. Acknowledging the importance of such deference, the Ninth Circuit has identified four instances in which it is appropriate to vacate an arbitration award: "(1) when the award does not draw its essence from the collective bargaining agreement; (2) when the arbitrator exceeds the scope of the issues submitted; (3) when the award runs counter to public policy; and (4) when the award is procured by fraud." *Sprewell*, 266 F.3d at 986.

## III.    Discussion

NV Energy argues that the Court should vacate the Arbitrator's award for three reasons: (1) it does not "draw its essence" from the CBA; (2) the Arbitrator exceeded the scope of his authority; and (3) the award violates public policy.[2]

---

[2] Local 1245 notes that it also disagrees with the Arbitrator's award in several respects. In particular, Local 1245 argues that the Arbitrator should have reinstated Parker *with* backpay. Doc. #25 at 17. However,

4

### A. The Award Draws Its Essence from the CBA

NV Energy argues that the award represents the Arbitrator's "own notions of industrial justice" because it finds both that Parker exposed a coworker to a hostile work environment by frequent use of offensive language, but also that NV Energy did not establish just cause to terminate Parker. Local 1245 counters that the Arbitrator directly answered the questions posed, which included determining the appropriate remedy for Parker, and based his determination on analysis of the CBA.

"As long as the award 'draws its essence' from the contract, meaning that on its face it is a plausible interpretation of the contract, then the courts must enforce it." *Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc. of Ariz.*, 84 F.3d 1186, 1190 (9th Cir. 1996). The Ninth Circuit has stated that the cryptic phrases "draw its essence" and "own brand of industrial justice" should not be read to "open a back door to judicial review of the merits of an arbitral award." *Haw. Teamsters and Allied Workers Union, Local 996 v. United Parcel Serv.*, 241 F.3d 1177, 1183 (9th Cir. 2001). Rather, "so far as the arbitrator's decision *concerns* construction of the contract, the courts have no business overruling him because their interpretation of the contract is different." *Id.* (quoting *Enterprise Wheel*, 363 U.S. at 599).

The Court finds that the Arbitrator's decision is a plausible interpretation of the CBA, and therefore will not disturb the Arbitrator's conclusions. The Arbitrator weighed the evidence presented by both sides and determined simply that NV Energy did not meet its burden to establish that Parker's conduct warranted termination. Importantly, the Arbitrator did not condone Parker's purported conduct, and noted that if proven, this conduct "would provide ample justification for his discharge." Doc. #23, Ex. A at 348. After weighing the evidence, however, the Arbitrator determined that Hernandez's testimony alone was not sufficient to establish that Parker's conduct

---

Local 1245 states that its disagreement is immaterial because the operative question for the Court is whether the Arbitrator's decision, "on its face . . . is a plausible interpretation of the contract." *Id.* (quoting *Madison Indus.*, 84 F.3d at 1190).

was so persistent to justify termination.  The Court finds that the Arbitrator's fact-finding role draws its essence from the CBA, and declines to vacate the award on this ground.  *See id.* ¶21.7; *Misco*, 484 U.S. at 44-45 (finding that the court of appeals erred in rejecting the arbitrator's fact-finding, "a task that exceeds the authority of a court asked to overturn an arbitration award").

### B. The Arbitrator Did Not Exceed the Scope of His Authority

The CBA states that "the arbitrator shall have no power to alter, change, detract from, or add to the provisions governing the labor relations of the Company and its employees, including, but not limited to, the NLR Act, NRS, and this Agreement."  Doc. #23, Ex. A ¶21.7.  NV Energy argues that the Arbitrator exceeded his authority because Parker's conduct clearly violated the harassment and discrimination policies of the NLRA, NRS, and the CBA, but the Arbitrator nonetheless ordered that Parker be reinstated.  Local 1245 contends that the award fell squarely within the issues presented to the Arbitrator, and that none of the related authorities state that an employer *must* terminate an employee for violations of the harassment and discrimination policies.

"[A]n arbitrator has no authority to ignore the plain language of a collective bargaining agreement that limits the scope of his authority."  *Haw. Teamsters*, 241 F.3d at 1181.  However, "an arbitrator should be given substantial latitude in fashioning a remedy under a CBA."  *Sprewell*, 266 F.3d at 297 (quoting *Enterprise Wheel*, 363 U.S. at 596-97).

The Court finds that the Arbitrator did not exceed the scope of his authority in finding that NV Energy did not meet its burden to show that the evidence against Parker warranted termination.  NV Energy's harassment and discrimination policy states that "[f]ailure to comply with any provision of this Code or Company policy is a serious violation, and *may result* in disciplinary action, up to and including termination of employment."  Doc. #23, Ex. A at 317 (emphasis added).  Since NV Energy's policies state that the company has the authority to terminate employees who violate the harassment policy, but does not require termination for *any* violation of the policy, an arbitrator does not exceed his or her authority by requiring that the employer adequately prove harassment prior to endorsing termination.  Ultimately, the arbitrator only addressed the issues

presented by the parties, and found that NV Energy did not meet its burden to prove the allegations against Parker. The Court finds that this was within the Arbitrator's authority, and declines to vacate the award on this ground. *See United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169, 173 (9th Cir. 1995) ("Because the arbitrator only decided the issues agreed to by the parties, it cannot be said that the arbitrator exceeded her authority in ordering the employees reinstated . . . .").

### C. The Award Does Not Violate Public Policy

NV Energy argues that the Arbitrator's award violates public policy, namely federal and state laws that prohibit harassment and discrimination based on race. Local 1245 argues that NV Energy's belief that the Arbitrator determined that Parker created a hostile work environment is mistaken,[3] and that the award therefore did not violate any explicit public policy goal.

To vacate an arbitration award on public policy grounds, the court must "(1) find that 'an explicit, well defined and dominant public policy' exists here and (2) that 'the policy is one that specifically militates against the relief ordered by the arbitrator.'" *Foster Poultry Farms*, 74 F.3d at 174 (quoting *Ariz. Elec. Power Co-op., Inc. v. Berkeley*, 59 F.3d 988, 992 (9th Cir. 1995)). "The party seeking to vacate the arbitration award bears the burden of showing that the arbitration award violates an 'explicit, dominant and well-defined' public policy." *Id.*

NV Energy certainly identifies a well-defined and dominant public policy: that employers should take measures to prevent harassment and discrimination based on race. However, NV Energy has not met its burden to establish that the award expressly contravenes this public policy. The Arbitrator determined that Parker's alleged conduct, *if proven*, would justify termination,[4] but

---

[3] The Arbitrator wrote that Hernandez's "demeanor was *thoroughly consistent* with that of an individual subject to a hostile working environment." Doc. #23, Ex A at 349 (emphasis added). However, the Arbitrator stopped short of finding that Hernandez actually experienced a hostile working environment.

[4] The Arbitrator wrote that there is "little if any dispute that the totality of the misconduct which grievant is accused of is cause for serious concern in any employment arena, and that, if proven, would provide ample justification for his discharge." Doc. #23, Ex. A at 348.

that NV Energy did not meet its burden to prove that Parker's conduct was sufficiently pervasive and extreme to justify termination under the CBA. Recognizing "the need for flexibility in meeting a wide variety of situations," the Supreme Court has stated that courts should grant deference to an arbitrator's chosen remedy. *Enterprise Wheel*, 363 U.S. at 597.

A number of courts of appeals have acknowledged that "[t]here is no public policy that every harasser must be fired. Instead, a company must 'exercise[] reasonable care to prevent and correct promptly any sexually harassing behavior.'" *Westavco Corp. v. Paperworkers*, 171 F.3d 971, 977 (4th Cir. 1999) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)).[5] The Court agrees with this conclusion, and finds that the Arbitrator's remedy—ordering NV Energy to reinstate Parker but refusing backpay and requiring Parker to attend sensitivity training at his own expense—does not expressly violate public policy encouraging employers to prevent harassment and discrimination based on race. Although this is an important public policy goal, vacating the Arbitrator's award would usurp his fact-finding role and ignore the Supreme Court and Ninth Circuit's tradition of deference toward labor arbitration. *See Enterprise Wheel*, 363 U.S. at 599 ("It is the arbitrator's construction which is bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.").

///

///

---

[5] *See also LB&B Assocs. v. Elec. Workers, IBEW, Local 113*, 461 F.3d 1195, 1198 (10th Cir. 2006) ("[A] sexually harassing employee is vulnerable to being discharged because of the serious nature of the offense, but the ultimate act of discharge must still satisfy [] 'just cause.'"); *Weber Aircraft Inc. v. Gen. Warehousemen and Helpers Union Local 767*, 235 F.3d 821, 826 n.3 (5th Cir. 2001) (citing *Westvaco* for the proposition that "because misconduct often differs in degree, there is no universal punishment that fits every case); *Chrysler Motors Corp. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 959 F.2d 685, 687-89 (7th Cir. 1992) (finding that public policy against sexual harassment was well-recognized, but that the arbitrator did not err in reinstating an employee who had not received warnings or discipline for prior misconduct); *Commc'n Workers of Am. v. Se. Elec. Co-op. of Durant, Okla.*, 882 F.2d 467, 469 (10th Cir. 1989) (finding that it did not violate public policy to defer to the arbitrator's decision to impose a one-month suspension—rather than termination—to an employee accused of sexual harassment).

**IV.     Conclusion**

IT IS THEREFORE ORDERED that NV Energy's Motion to Vacate the Arbitrator's Award (Doc. #24) is DENIED.

IT IS FURTHER ORDERED that Local 1245's Motion for Summary Judgment (Doc. #25) is GRANTED.

IT IS FURTHER ORDERED that the clerk of court shall enter judgment for Local 1245 and against NV Energy.

IT IS SO ORDERED.

DATED this 25th day of June, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE